IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEUTSCHE BANK NATIONAL TRUST, )<br>COMPANY, AS TRUSTEE FOR FREMONT, )<br>HOME LOAN TRUSTEE 2004-4 ASSET, )<br>BACKED CERTIFICATES, SERIES 2004-2, )<br>)<br>)<br>Plaintiffs, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Defendant. )<br>_____) | Case No. 1:12-cv-11038-NMG |

**UNITED STATES' OBJECTION TO RECOMMENDED RULING**

The defendant United States of America, pursuant to Fed. R. Civ. P. 72(b)(2)-(3), 28 U.S.C. § 636(b)(1)(C), objects to the report and recommendation issued by Magistrate Judge Bowler dated January 28, 2014 (Dkt.# 35), and requests a de novo determination of the following recommended rulings.

I.  THE REPORT AND RECOMMENDATION INCORRECTLY DETERMINES THE PRIORITY OF PLAINTIFF'S MORTGAGE, AS OF A DATE CONSISTENT NEITHER WITH PLAINTIFF'S PLEADINGS, NOR ITS MOTION FOR SUMMARY JUDGMENT.

Plaintiff Deutsche Bank National Trust Company ("Plaintiff") filed a complaint seeking to obtain priority for a mortgage, recorded in 2011, retroactively to the original date of filing of a defective mortgage, which was recorded in 2004 and discharged in 2005, more than five years prior to the mortgage at issue. (Dkt. #1-3.) Both counts of Plaintiff's complaint unambiguously establish that Plaintiff wished the Court to grace its security interest with a priority as of "the date of recordation [of the defective mortgage], September 15, 2004." (*Id*., pp. 4-5). Perhaps betraying a misunderstanding of the term, Plaintiff's motion for summary judgment then

-1-

inconsistently requested that "Defendant's tax liens be subrogated to the Plaintiff's mortgage" (dkt. #22 at p. 7, dkt. #26 at p. 10).[1] ("Subrogation" does not mean "granted a priority junior to." Rather, it means "to stand in the shoes of." *National Shawmut Bank v. New Amsterdam Casualty Co.*, 411 F.2d 843, 844 (1st Cir. 1969)). As of this writing, Plaintiff has not sought leave to amend any of these papers.

Magistrate Judge Bowler's Report and Recommendation (the "Report," dkt. #35) proposes to grant Plaintiff's mortgage an equitable priority as of a third date, which correlates neither to the September 15, 2004 priority date sought in the Complaint, nor to the recording date of any of the federal tax liens with respect to which Plaintiff might have asserted a right to subrogation. The Report appears to conclude that Plaintiff's mortgage was actually entitled to subrogation to the priority of an earlier mortgage, which had been recorded on the property on August 13, 2003. (Dkt.#20 ¶ 5; dkt. #20-4). This conclusion is an error of law, as explained below; but even if it were correct, the granting of this relief is procedurally inappropriate on the record before this Court.

Rule 54(c) permits a court to "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," Fed. R. Civ. P. 54(c), but "creates no right to relief premised on issues not presented to, and litigated before, the trier." *Dopp v. HTP Corp.*, 947 F.2d 506, 518 (1st Cir. 1991); *see also Powell v. Natl. Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir. 2004) opn. corrected, 511 F.3d 238 (2d Cir. 2004) (exception to Rule 54(c) exists

---

[1] The United States does not suggest that its tax liens should be subrogated to any claim of Plaintiff, and maintains that the priority of those lien claims is as indicated on the public record. Neither does the United States concede that Plaintiff is entitled to subrogation, either to the federal tax liens which were paid off by its mortgage loan, or to the federal tax liens which arose subsequently and are now secured in the property with a record priority senior to the Plaintiff's mortgage.

"when a court grants relief not requested and of which the opposing party has no notice, thereby prejudicing that party. In such case, unasked for relief should not be granted"). "Rule 54(c)'s concern for appropriate relief does not include relief which a plaintiff has foregone because of failures in the pleadings or in the proof." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1173 (1st Cir. 1995).

If Plaintiff wished for this Court to grace its mortgage with a priority as of August 13, 2003, it could have prayed for this relief in its Complaint. It could have so argued in its Motion for Summary Judgment or in opposition to that of the United States. It could have sought to amend either paper at any point to be clear that August 13, 2003, and not some other date, was the effective date of the priority it desired. It has not done so, and as a result, the Report's recommended conclusion– that Plaintiff's motion for summary judgment be granted – will not even grant the relief that the Report appears to endorse. (The motion for summary judgment requests that the federal "tax liens be subrogated to the Plaintiff's mortgage" – an absurd result in light of the reasoning in the Report.)

II.   PLAINTIFF'S MORTGAGE IS NOT ENTITLED TO PRIORITY AS OF AUGUST 13, 2003.

Even were Plaintiff to resolve this procedural difficulty, it is in no event entitled to the relief recommended by the Report. The Report incorrectly applies the Massachusetts volunteer doctrine to Plaintiff's pursuit of its *business interests*, rather than protection of its *property interests*. It incorrectly posits, on no authority, that the record priority of a security interest must somehow be bargained-for. And it incorrectly conflates the right to equitable subrogation with a claim of unjust enrichment, which is pre-empted by federal statute and may not be asserted against the United States under the doctrine of sovereign immunity.

**A.  The term "interest" in the context of subrogation refers to rights to property, not to acts of business judgment.**

The Report incorrectly concludes that the volunteer doctrine does not bar Plaintiff from subrogation to the August 13, 2003 MERS mortgage, even though Plaintiff had no rights in the property prior to August 13, 2003. *See, e.g., Prairie State Nat. Bank v. United States*, 164 U.S. 227, 231 (1896) (party seeking subrogation "must not act as a mere volunteer, but on compulsion, to save himself from loss by reason of a superior lien or claim on the part of the person to whom he pays the debt, as in cases of sureties, prior mortgagees, etc. The right is never accorded in equity to one who is a mere volunteer in paying a debt of one person to another."

The Report instead concludes that Plaintiff  "was protecting its interest, its first lien position" and "was not acting as a volunteer because it was *furthering its own interest* in having the prior MERS mortgage and the federal tax liens [of record in 2004] paid off in order to obtain first lien position." (Dkt. #35 at p. 11, emphasis added.)  At the time Plaintiff chose to make the loan, it did not yet have first lien position.[2]  Indeed, it had no lien at all. Evidently Plaintiff *desired* to secure a mortgage in first lien position, but its act of loaning funds to satisfy existing encumbrances on the property did not, without more, create a pre-existing property interest in favor of Plaintiff.

Transacting in a manner consistent with one's business goals is no defense to the volunteer doctrine. Rather, to be entitled to subrogation, one must act in the defense of one's

---

[2]  The United States also objects to the proposed factual finding that Plaintiff's agent "did not record the new mortgage [in August 2004] due to insufficient loan proceeds to satisfy" the lien indicated on a freshly-recorded Notice of Federal Tax Lien. (Dkt. #35 at p. 5.) That notice represented no new lien, but was a duplicate of an existing notice. (*Id.;* Dkt. #20 at ¶¶ 16-17.) And despite the parties' agreement that the additional funds should pay off the "intervening lien," the increase in the loan amount – from $531,750.00 to $565,250.00 – bore no relation to the amount of tax liability identified on the August 2004 Notice of Federal Tax Lien. (Dkt. #20 at ¶16).

existing property rights.  *See, e.g.*, *Aetna Life Ins. Co. v. Middleport*, 124 U.S. 534, 549 (1888) ("The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own"); *Skinner v. Tirrell*, 159 Mass. 474, 475 (Mass. 1893) ("A mere volunteer is not entitled to subrogation. Nor is one who lends money to another to pay a debt entitled as a matter of right to stand in the creditor's shoes").

Here, by contrast, Plaintiff has admitted that it "was by no means responsible for the Lalondes' debts, i.e. their mortgage to MERS and also the recorded tax liens." (Dkt. #22 at p. 5.) When it nonetheless furnished the funds to satisfy those debts, Plaintiff met the definition of a "mere volunteer."  *See Aetna*, 124 U.S. at 551 ("Any one who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer"). *See also Henningsen v. United States Fidelity & Guaranty Co.*, 208 U.S. 404, 411 (1908) (bank "under no legal obligation to loan its money" was a volunteer not entitled to subrogation); *Prairie State Bank v. United States*, 164 U.S. 227, 232 (1896) (bank which lent money only "on the faith of a presumed agreement and of supposed rights acquired thereunder" was a volunteer not entitled to subrogation).

Since there is no suggestion that Plaintiff made its loan to preserve any existing rights it held in the property, Plaintiff is a mere volunteer with respect both to the August 13, 2003 MERS mortgage and the 2004 federal tax liens, and may not be subrogated to the priority of any of those interests. The contrary conclusion of the Report and Recommendation cannot be sustained.

11090152.1

### B. No "bargain" is required to secure the record priority of an interest in land.

The Report notes that the "granting of subrogation cannot work any injustice to the junior lienholder," but then proceeds to analyze the purported injustice to the potential *senior* lienholder (Plaintiff) of a *failure* to obtain subrogation. (Dkt. #35 at p. 12.)  The Report further suggests, with respect to the clear chain of title at the time the 2009 and 2010 notices of federal tax lien were recorded, that the United States "did not bargain to gain this benefit and only gained it because of mistake." *Id.*  As a threshold matter, the absence of notice of an existing encumbrance on record title is no "benefit."  Rather, for a mortgage to be valid against third parties without actual notice, Massachusetts law requires that the mortgage be recorded, both to protect the mortgagee's interest from attack and to avoid prejudice to other claimants.  *Moore v. Gerrity Co., Inc.*, 818 N.E.2d 213, 216 (Mass. App. 2004) ("The unrecorded mortgage cannot bind persons who are without actual notice of the facts therein recited."); *Tramontozzi v. D'Amicis*, 183 N.E.2d 295, 297 (Mass. 1962) (party relying upon an alleged unrecorded mortgage has the burden of proving actual notice of such a mortgage).

Record priority, under the Massachusetts notice statute, requires that a security interest be recorded with the applicable registry of deeds in order for the interest to be valid against any third parties, other than those with actual notice of the interest.  M. G. L. ch. 183, § 4.  The law does not require that a mortgagee or lien claimant "bargain to gain [the] benefit" of a security interest with record priority as of the date its instrument was recorded.  Rather, that right is effective upon recordation without more.  To the extent that the Report implies either that the record priority of the 2009 and 2010 federal tax liens, or the clear chain of title when the first lien notice was recorded in 2009, was an improper "benefit" to the United States because it was not "bargained for," this is an error of law unsupported by authority and cannot be sustained.

### C. The right to subrogation under 26 U.S.C. § 6323(i)(2) is distinct from a claim for unjust enrichment under Massachusetts law, and conflating the two results in a violation of sovereign immunity.

To the extent that the Report's use of the language of "bargain" and "benefit" simply reflects the magistrate judge's view of this matter as an unjust enrichment case, this Court should decline to adopt that framework. As argued in greater detail in the United States' Motion for Summary Judgment, where federal tax liens are implicated, equitable subrogation is a matter governed by federal statute. Any state-law remedies outside the scope of 26 U.S.C. §6323(i)(2) are pre-empted by that statute and may not be imposed against the government without violating sovereign immunity. (Dkt. #24, pp. 10-18.) Nowhere does the Report identify the waiver of sovereign immunity that allows a claim for unjust enrichment to be stated against the United States, or identify how the relief it seeks to grant (which it characterizes as "equitable subordination") falls within the ambit of 26 U.S.C. § 6323(i)(2).

Moreover, even assuming that the Report simply followed the reasoning of *Progressive Consumers Federal Credit Union v. United States*, 79 F.3d 1228, 1237 (1st Cit. 1996), uncritically, the undisputed record here still does not support the relief it recommends. The facts are not "analogous to the circumstances at issue in *Progressive*, where 'the government could not have anticipated its current priority status.'" (Dkt. #35 at p. 14.) Rather, the *Progressive* analysis turns on a key distinction: here, unlike in *Progressive*, there was no mortgage of record when the 2009 and 2010 Notices of Federal Tax Lien were recorded. A title search at that time would have revealed only that the most recent mortgage on the Property had been released in 2005, and would not have put a third party on notice that the Plaintiff, or any other creditor, claimed any interest of record in the Property. Any creditor who recorded a lien in 2009 or 2010 would have had every expectation that its interest would enjoy seniormost priority in the property. To hold

11090152.1

otherwise, as the Report appears to do, would privilege the nondiligent creditor over the diligent,[3] and undercut the ancient policy underlying the Massachusetts notice statute.

For its failure to consider the questions of pre-emption and sovereign immunity raised in the United States' Motion for Summary Judgment, if not for its misapplication of *Progressive* to the facts of this case, the conclusions of the Report and Recommendation may not be sustained.

III.  CONCLUSION

The Report and Recommendation correctly concludes that, under 26 U.S.C. § 6323(i)(2), Plaintiff's valid mortgage may not be subrogated to the priority of its earlier, defective, discharged mortgage, which was recorded on September 15, 2004. However, the Report's analysis incorrectly implies that Plaintiff's mortgage may be subrogated to the priority of the MERS mortgage of August 13, 2003, and the Report's conclusion inconsistently recommends that the federal tax liens of the United States be subrogated to the Plaintiff's mortgage. Neither of these outcomes is correct as a matter of law.

The United States' federal tax liens are senior of record to Plaintiff's mortgage, and are neither entitled to, nor would benefit from, subrogation to Plaintiff's mortgage. And because Plaintiff was a "mere volunteer" with respect to the August 13, 2003 MERS mortgage, it may not be subrogated to the priority of that mortgage under either Massachusetts law or 26 U.S.C. § 6323(i)(2). Inasmuch as no other doctrine identified in the Report and Recommendation supports Plaintiff's claim to seniormost priority in the property, this Court should find that the

---

[3] The Report glosses over the remarkable failures of diligence by Plaintiff's agent, which are undisputed by the parties (dkt. #20) and are further illustrated in the United States' Motion for Summary Judgment. (Dkt. #24, pp. 13-14.)

tax liens of the United States are senior as a matter of law to the Plaintiff's mortgage, and judgment should enter as a matter of law in favor of the United States.

Respectfully submitted,

KATHRYN KENEALLY
Assistant Attorney General
Tax Division, U.S. Department of Justice

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 2/11/2014.

*/s/ Julie C. Avetta*

*/s/ Julie C. Avetta*
JULIE C. AVETTA
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 55, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 616-2743
Fax: (202) 514-5238
Email: Julie.C.Avetta@usdoj.gov

Local Counsel:

CARMEN M. ORTIZ
United States Attorney

11090152.1